IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT MARTIN,

          Plaintiff,

v.                                         CIVIL ACTION NO. 2:25-cv-00473

LT. TIMOTHY TIBBS, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Amended Complaint* (Document 1-2), Defendant West Virginia Division of Corrections and Rehabilitation's *Motion to Dismiss Plaintiff's Complaint* (Document 11), the *Memorandum of Law in Support of Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 12), *Defendant Timothy Tibbs' Motion to Dismiss* (Document 13), *Defendant Timothy Tibbs' Joinder in the Memorandum of Law in Support of Defendant WVDCR's Motion to Dismiss* (Document 14), the *Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss and Defendant Tibbs' Motion to Dismiss by Joinder* (Document 17), and *Defendant West Virginia Division of Corrections and Rehabilitation's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 19).

In addition, the Court has reviewed the *Motion to Dismiss on Behalf of Defendants McFarland, Brill, Vincent, Rippy, Gier, and Blouir* (Document 15), the *Memorandum of Law in Support of Motion to Dismiss on Behalf of Defendants McFarland, Brill, Vincent, Rippy, Gier, and Blouir* (Document 16), the *Plaintiff's Memorandum Response to Defendants McFarland, Brill,*

*Vincent, Rippy, Gier, and Blouir's Motion to Dismiss* (Document 18), and *Defendants McFarland, Brill, Vincent, Rippy, Gier, and Blouir's Reply to Plaintiff's Memorandum Response to Defendants McFarland, Brill, Vincent, Rippy, Gier, and Blouir's Motion to Dismiss* (Document 20). For the reasons stated herein, the Court finds that the motions to dismiss should be granted as to the West Virginia Division of Corrections and Rehabilitation and denied as to the remaining Defendants.

### FACTUAL ALLEGATIONS

The Plaintiff, Robert Martin, was incarcerated at North Central Regional Jail (NCRJ) at all relevant times, although he was no longer incarcerated at the time he filed suit. He brought this complaint against Lt. Timothy Tibbs, Correctional Officers McFarland, Daniel Brill, Vincent, Rippie, Greer, Blouir,[1] Doe, and the West Virginia Division of Corrections and Rehabilitation (WVDCR). He alleges four separate incidents of excessive force against him at North Central Regional Jail during a two-week period in March 2023.

On or about March 8, 2023, Mr. Martin filled out a sick call. Some of the nurses or correctional officers believed he was attempting to hit on the nurses. Officer Greer directed Mr. Martin to come to the bean hole in his cell. When he did so, Officer Greer sprayed him in the face with O.C. spray without any warning. He posed no threat and had not disobeyed any order.

Mr. Martin made critical remarks about Correctional Officer Smith during a hospital stay. On or about March 14, 2023, while he was being transported from the hospital back to NCRJ, the correctional officers with him told him that they were going to put him in a pickle suit and place him on suicide watch because of his negative comments about Officer Smith. When he returned

---

1 The Plaintiff identified this Defendant as "Correctional Officer Blaor." The Court has used the spelling contained in the motion to dismiss filed by the individual Defendants throughout.

to NCRJ and stripped out in the bathroom, Officers Vincent, Rippi and Doe(s) sprayed him with O.C. spray in the bathroom and did not properly decontaminate him. After he was placed in a segregation cell, Officer Greer sprayed him through the bean hole without warning. He was then removed from the cell and placed in a restraint chair. While he was restrained, Officers McFarland, Brill, and Doe beat, punched, and tazed him repeatedly. Officer McFarland also shot him in the foot with a PepperBall gun while he was restrained.

The next day, on or about March 15, 2023, Mr. Martin was conducting legal research in the law library when Lt. Tibbs approached and began arguing with him. Lt. Tibbs sprayed Mr. Martin without warning. Lt. Tibbs had not issued any orders, and Mr. Martin was not a threat to himself or anyone else.

On or about March 23, 2023, Mr. Martin accidentally clogged the toilet in his cell, and it began to flood. He was placed in an interview room in a restraint chair. Officer Blouir and Lt. Tibbs beat, punched, and struck him, Lt. Tibbs using a night stick. Mr. Martin posed no threat at the time of the beating.

Lt. Tibbs has been involved in dozens of excessive force complaints, primarily involving the use of O.C. spray. Mr. Martin alleges that he suffered serious injury and other damages from each incident of excessive force.

The Plaintiff asserts the following causes of action: Count One – Outrageous Conduct; Count Two – Violation of 42 U.S.C. § 1983; and Count Three – Vicarious Liability.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or

pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

4

do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendant WVDCR argues that the sole claim against it, for vicarious liability, is not a stand-alone tort. It contends that it cannot be vicariously liable for the outrageous conduct claim because it involves intentional conduct by the individual Defendants. It further argues that it is entitled to qualified immunity under West Virginia law because the alleged actions of the individual defendants were outside the scope of employment. In addition, WVDCR argues that the case should be dismissed based on the Plaintiff's failure to exhaust administrative remedies, citing an affidavit from WVDCR's Program Specialist, Inmate Grievance Examiner in which she indicates that she did not find appeals of grievances from Robert Martin in 2023 in a search of the grievance system. Lt. Tibbs joins as to the failure to exhaust administrative remedies defense.

The remaining individual Defendants argue that they are entitled to qualified immunity. They further contend that the Plaintiff's assertion that they were acting within the scope of their employment renders Counts I and II official capacity claims that can proceed only against WVDCR.[2]

The Plaintiff argues that WVDCR is not entitled to qualified immunity and can be held vicariously liable for the outrageous conduct of its employees. He argues that a jury could find that the individual defendants were acting within the scope of employment and for the benefit of WVDCR when they tased, physically beat, and deployed O.C. spray against the Plaintiff. The Plaintiff further argues that he was not required to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA) because he was not incarcerated at the time he filed his Complaint and Amended Complaint. As to the individual Defendants, he contends that clearly established law bars use of force in the manner alleged, including use of O.C. spray, tasers, and physical force against a compliant inmate who poses no threat. The Plaintiff further argues that his amended complaint clearly alleged Counts One and Two against the individual Defendants in their individual capacities, and nothing bars plaintiffs from asserting individual claims against officers and vicarious liability claims against WVDCR.

### A. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prison inmate is prohibited from bringing a Section 1983 action in federal court "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "A former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a

---

[2] The individual Defendants also argue for dismissal of Count Three, asserting vicarious liability, to the extent it is asserted against them. The Plaintiff's response confirms that Count Three is alleged only against the WVDCR.

'prisoner' subject to the PLRA." *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) (unpublished); *see also Saunders v. Kummer*, No. CV 2:22-00173, 2023 WL 2025240, at *3 (S.D.W. Va. Feb. 15, 2023) (Copenhaver, S.J.) (finding that a plaintiff who filed suit while he was not incarcerated was not subject to the exhaustion requirement, despite previous dismissal of a similar suit for failure to exhaust). Because the Plaintiff alleges that he was no longer incarcerated at the time of filing of his complaint, the Court finds no grounds for dismissal based on the PLRA, and Lt. Tibbs' motion to dismiss must be denied.

### B. Qualified Immunity

When determining whether a defendant is entitled to qualified immunity for an excessive force claim under 42 U.S.C. § 1983, courts "examine (1) whether the facts illustrate that [the defendant] violated [the plaintiff's] constitutional right to be free from excessive force, and (2) if so, whether [the defendant's] conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013).

Beginning with the first prong, the Plaintiff has alleged that the individual Defendants violated his Eighth Amendment rights. "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). The objective component looks at "whether the force applied was sufficiently serious to establish a cause of action." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). Force is sufficiently serious if it is "something more than 'de minimis' force." *Brooks*, 924 F.3d at 112. (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)). Extensive use of pepper spray is sufficient to constitute something more than de minimis force. *See Iko v. Shreve*, 535 F.3d 225, 238-39 (4th Cir. 2008).

7

The subjective component asks whether an officer "acted with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Under this standard, "[t]he state of mind required. . . is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Whether an inmate can establish wantonness "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Jones*, 984 F.3d at 302 (quoting *Whitley*, 475 U.S. at 320-21). The factors relevant to whether an officer applied force in "good faith" or with an intent to cause harm are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). Correctional officers apply force with intent to harm "when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct." *Jones*, 984 F.3d at 302 (quoting *Brooks*, 924 F.3d at 113). "[T]he use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of such an impermissible motive." *Id.* (quoting *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017).

Mr. Martin alleges that Officers Greer, Vincent, Rippi, and Tibbs all sprayed him with O.C. spray without warning when he posed no threat and had not disobeyed any order. He further alleges that Officers McFarland, Brill, Blouir and Tibbs all beat, punched, tazed, or struck him while he was restrained. In addition, he alleges that Officer McFarland shot him with a PepperBall gun and Lt. Tibbs hit him with a nightstick, both while he was restrained. In each

8

incident of excessive force, he asserts that he posed no threat, had not disobeyed any order, and there was no legitimate justification whatsoever for any use of force. Instead, Mr. Martin contends that each incident constituted punishment inflicted in retaliation—for perceived flirtation with nurses, for making negative remarks about another correctional officer, for engaging in an argument Lt. Tibbs instigated, and for clogging a toilet. Clear precedent establishes that use of O.C. spray, tasers, and physical beatings against a compliant, non-threatening inmate constitute excessive force in violation of the Eighth Amendment. Given the precedent, no reasonable correctional officer would believe that spraying an inmate with O.C. spray through the bean hole in his cell without warning or beating him while he was secured in a restraint chair are permissible uses of force under the Eighth Amendment.

The West Virginia Supreme Court of Appeals applies the federal standard for qualified immunity. *See W. Virginia Div. of Corr. & Rehab. v. Robbins*, 889 S.E.2d 88, 97 (W. Va. 2023) ("West Virginia's qualified immunity jurisprudence mirrors federal law."). Therefore, accepting the Plaintiff's factual allegations as true, the Defendants' motions based on qualified immunity must be denied as to both the federal and state claims against the individual Defendants.

### C. Official Capacity of Individual Officers

The individual Defendants cite no law for the proposition that pleading that a state official acted within the scope of employment in violating a plaintiff's constitutional rights, such that the state employer may be subject to vicarious liability, precludes a claim for relief against the individual officer. In 1991, the Supreme Court rejected the proposition that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). The Court explained that § 1983 is designed to redress

9

deprivation of constitutional rights "by an official's abuse of his position," and the "official authority" central to such suits does not insulate officials from suit in their personal capacities. *Id.* at 27-28 (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). The Court found "no support" for a distinction between actions "outside the official's authority" and "those both within the official's authority and necessary to the performance of the governmental functions." *Id.* at 28. Thus, to the extent the individual Defendants seek dismissal based on the argument that the Plaintiff's scope of employment allegation "transforms the claims into official capacity suits as if they are plead against the WVDCR," the motion must be denied. (Defs.' Mem. at 8) (Document 16.)

### D. State Immunity from Vicarious Liability - WVDCR

The West Virginia Supreme Court of Appeals has laid out the standard for state immunity from vicarious liability as follows:

> If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

Syl. Pt. 12, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014). The court explained that acts "manifestly outside of the scope of [an employee's] authority or employment" are "notable for being driven by personal motives which in no way benefit the State or the public, nor is it reasonably incident to the official or agent's duties." *Id.* at 765. However, "situations wherein State actors violate clearly established rights while acting within the scope of their authority and/or employment, are reasonably borne by the State." *Id.* The West Virginia Supreme Court has adopted the Restatement factors for determining whether conduct is within the scope of employment: "if the conduct is (1) of the kind he is employed to perform; (2) occurs within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master, and (4) if force is used, the use of force is not unexpectable by the master." *W. Virginia Div. of Corr. & Rehab. v. Robbins*, 889 S.E.2d 88, 103 (W. Va. 2023) (emphasis omitted). "The 'purpose' of the act is of critical importance." *Id.* "Whether an act falls within the scope of employment generally presents a question of fact," unless "the facts are undisputed and no conflicting inferences are possible." *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675, at *7 (W. Va. Mar. 31, 2023). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (quoting *A.B.*, 766 S.E.2d at 769).

This Court has previously found that the use of force against inmates for no potentially justifiable or legitimate purpose generally falls outside the scope of employment because it does not serve the purposes of the WVDCR. *See, e.g.*, *Marcum v. Bailey*, No. 2:20-CV-00628, 2020 WL 7646977, at *5 (S.D. W. Va. Dec. 23, 2020) (Berger, J.); *Hamrick v. W. Virginia Div. of Corr.*

*and Rehab.*, No. 2:24-CV-00728, 2025 WL 781089, at *4 (S.D. W. Va. Mar. 11, 2025) (Berger, J.).

The Plaintiff emphasizes the West Virginia Supreme Court's reasoning in *Crawford*, finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where the Plaintiff alleged unjustified use of OC spray, failure to decontaminate, and extended use of restraints. *Crawford*, 2023 WL 2729675, at *7. However, in *Crawford*, the West Virginia Supreme Court concluded that a jury could find that the subject officer was acting within the scope of his employment based on the disputed facts in that case, including evidence that the plaintiff was on drugs, behaved erratically, refused directives from officers, and could have been viewed as a security risk. *Id.* at *1-3, 7.

Mr. Martin alleges that he posed no threat and disobeyed no orders and was either in restraints or attacked without warning in each of the four incidents. Spraying an inmate with O.C. spray based on a perception that he was attempting to hit on a nurse by submitting a sick call in no way furthers the interests of the WVDCR. Nor does beating and tazing an inmate in a restraint chair. Therefore, accepting the Plaintiff's factual allegations as true, no reasonable inference can be drawn that the individual Defendants' intentional wrongful conduct was done for the benefit of the WVDCR. Although the conduct occurred at the time and place of employment, the factual allegations are devoid of any possible basis for the individual Defendants to believe that these uses of force would further the interests of the WVDCR. Based on these allegations, the individual Defendants engaged in intentional conduct outside the scope of employment. Therefore, the WVDCR's motion to dismiss the vicarious liability claim must be granted.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that Defendant West Virginia Division of Corrections and Rehabilitation's *Motion to Dismiss Plaintiff's Complaint* (Document 11) be **GRANTED** as to Count III, as set forth herein, and that Defendant West Virginia Division of Corrections and Rehabilitation be **DISMISSED** from this case.  The Court further **ORDERS** that *Defendant Timothy Tibbs' Motion to Dismiss* (Document 13) and the *Motion to Dismiss on Behalf of Defendants McFarland, Brill, Vincent, Rippy, Gier, and Blouir* (Document 15) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    November 12, 2025

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA